**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

JOSE CARDENAS-MENDOZA,
              *Defendant-Appellant.*

No. 07-10553

D.C. No.
CR-05-01969-CKJ

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
December 10, 2008—San Francisco, California

Filed August 26, 2009

Before: Sidney R. Thomas and Richard A. Paez,
Circuit Judges, and Vaughn R. Walker,*
Chief District Judge.

Opinion by Chief District Judge Walker

*The Honorable Vaughn R. Walker, Chief Judge, United States District
Court for the Northern District of California, sitting by designation.

11801

## COUNSEL

Francisco León, Francisco León P.C., Tuscon, Arizona, for the appellant.

Diane J. Humetewa, United States Attorney, District of Arizona, Christina M. Cabanillas, Appellate Chief and Bruce M. Ferg, Assistant United States Attorney, Tuscon, Arizona, for the appellee.

## OPINION

WALKER, Chief District Judge:

Jose Cardenas-Mendoza appeals from a conviction in the United States District Court for the District of Arizona for possessing with intent to distribute methamphetamine and importing methamphetamine. He argues the district court erred: (1) when it denied a motion for a mistrial following the government's reference to prior bad acts in its opening statement; (2) when it denied his request to produce the government's Treasury Enforcement Communication System (TECS) hit notice; and (3) when it denied his request to strike the testimony of a government agent under the Jencks Act, 18 U.S.C. § 3500(d), when the government could not produce a transcript of the agent's grand jury testimony. We have jurisdiction pursuant to 28 U.S.C. § 1291.

The district court did not err with respect to the first two issues on appeal but did abuse its discretion under the Jencks Act when it did not strike the testimony of a government agent whose grand jury testimony transcript could not be produced. Because the error was harmless, however, we affirm Cardenas-Mendoza's conviction and sentence.

I

Cardenas-Mendoza was arrested on September 22, 2005 as he attempted to cross the United States-Mexico border at the

DeConcini Port of Entry in Nogales, Arizona. Cardenas-Mendoza was referred to the secondary inspection area because he was shaking abnormally and because of a TECS hit notice on Cardenas-Mendoza's pick-up truck. During the secondary inspection, officers discovered a trap door concealing a secret compartment in Cardenas-Mendoza's vehicle. The compartment held thirteen packages of methamphetamine weighing 8.36 gross kilograms and containing 5.8 kilograms of 88 percent pure methamphetamine.

While officers searched his car, Customs and Border Patrol (CBP) Officer Stonie Costa took Cardenas-Mendoza inside so that Cardenas-Mendoza could not see the search. Once officers found the drugs in the truck, Immigration and Customs Enforcement (ICE) Agent Steve Huerta was summoned to question Cardenas-Mendoza. Because Officer Costa speaks Spanish more fluently than Agent Huerta, Officer Costa assisted with the questioning.

Agent Huerta and Officer Costa offer one account of Cardenas-Mendoza's questioning. They testified at trial that they began by stating they knew why Cardenas-Mendoza was there, that Cardenas-Mendoza knew why he was there, and that they had received information about Cardenas-Mendoza's border crossing. In their account, Cardenas-Mendoza responded by asking "what drugs?" Agent Huerta and Officer Costa stated that they told Cardenas-Mendoza they had not mentioned drugs at all.

Cardenas-Mendoza testified at trial and offered a somewhat different account of the questioning. According to Cardenas-Mendoza, Agent Huerta mentioned the drugs in the vehicle before giving Cardenas-Mendoza his Miranda warnings and well before Cardenas-Mendoza used the word "drugs." Cardenas-Mendoza's defense at trial was that he was nothing more than an unknowing dupe of drug smugglers. He testified that he had lent his truck to his acquaintance "Paco" that morning with the understanding that Paco return the truck by

3 PM so that Cardenas-Mendoza could cross the border in time to buy a washing machine.

Cardenas-Mendoza was indicted on October 19, 2005 on two counts: for knowingly and intentionally possessing methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) and for importing the drug into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(1)(H). Agent Huerta testified before the grand jury that same day. On December 21, 2005, the government received notice that the grand jury reporter, Ron Lunsford of Arizona Court Reporting, had died. Lunsford had been responsible for securing his own notes, tapes and transcripts. While the government recovered most of Lunsford's materials, the government could not locate materials from Cardenas-Mendoza's grand jury hearing.

Prior to trial, the government notified both Cardenas-Mendoza and the district court that because of Lunsford's death, it could not provide the grand jury transcript. Cardenas-Mendoza moved under the Jencks Act to preclude Agent Huerta from testifying at trial because Agent Huerta's grand jury testimony was not available for cross examination. The government opposed the motion, arguing it was not responsible for the missing transcript and recounting the efforts it undertook to recover the grand jury testimony. The district court denied the Jencks Act motion, finding that sanctions were unnecessary in light of the government's good faith attempt to provide the transcript. Agent Huerta testified during trial, and the defense cross-examined him using notes Agent Huerta had written contemporaneous to questioning Cardenas-Mendoza at the border and a report Agent Huerta had made a few weeks later.

Cardenas-Mendoza filed an additional motion to compel disclosure of the Treasury Enforcement Communication System (TECS) hit notice, because he wished to use the document to cross examine the agents who interrogated him. The

government opposed the motion and provided a copy of the notice for the district court to review in camera. After determining that the information contained in the TECS notice was collateral and that disclosure was not required, the district court denied the motion.

The trial began on January 9, 2007. During its opening statement, the government referred to anticipated testimony regarding the truck's hidden compartment and the labor required to build it. Specifically, the government stated:

> And Officer Bavaro will tell you about this particular compartment in the defendant's truck, how it appeared to have been used more than once. In fact, there are layers of adhesive where the metal — the metal top of the compartment had been opened and closed more than once, as well as some indication of very recent use, some fresh duct tape holding the metal cover in place.

The government also referred to testimony that "defendant had owned the truck for just over one year." Cardenas-Mendoza moved for a mistrial, arguing that the pre-trial report did not notice the government's intent to refer to prior bad acts. The district court denied the motion for a mistrial but barred any further mention of the compartment's prior use. The court also offered to give a curative instruction that the jury disregard the comments as unsupported by the evidence, but Cardenas-Mendoza declined for fear the instruction would only draw more attention to the comment. The government made no further reference to the compartment's age or potential prior use.

The trial lasted three days. Agent Huerta testified for the government, and after his direct testimony, Cardenas-Mendoza renewed his motion to strike the testimony under the Jencks Act. Cardenas-Mendoza testified on his own behalf and disputed the government's claim that he knew drugs were

in the vehicle. Evidence presented by the government included the testimony of a border agent who observed Cardenas-Mendoza shaking as he approached the border, an audio recording of Cardenas-Mendoza speaking with his girl-friend while he was in jail awaiting trial in which she does not express surprise that he had been caught at the border, testimony that the secret compartment in the pick-up truck would have been difficult to construct, and testimony by Agent Huerta and Officer Costa that Cardenas-Mendoza used the word "drugs" before they did. The jury found Cardenas-Mendoza guilty on both counts of the indictment. He was sentenced to two concurrent terms of 200 months imprisonment, followed by concurrent terms of 60 months supervised release.

## II

We first turn to Cardenas-Mendoza's claim that the district court erred when it denied a mistrial in light of the prosecution's opening statement. When there are allegations of prosecutorial misconduct, the court reviews a district court's denial of a mistrial for abuse of discretion. *See United States v. Washington*, 462 F.3d 1124, 1135 (9th Cir. 2006). Cardenas-Mendoza argues that the government's reference to evidence that Cardenas-Mendoza had used the secret compartment in his truck before was misconduct that no curative instruction could fix.

[1] A district court does not abuse its discretion in denying a mistrial where the prosecutor's improper statement is not prejudicial. *Washington*, 462 F.3d at 1135-36. The government's inability to produce evidence promised in an opening statement "would appear to harm the Government's case rather than the defense." *United States v. Monks*, 774 F.2d 945, 955 (9th Cir. 1985) (citation omitted). A curative instruction may obviate the impact of the government's statements, as juries are assumed to follow the court's instructions. *United*

*States v. Steele*, 298 F.3d 906, 913 (3d Cir. 2002); *United States v. McChristian*, 47 F.3d 1499, 1508 (9th Cir. 1995).

**[2]** The district court instructed the jury to base its decision solely on the evidence presented and reminded the jury that the attorneys' statements were not evidence. The district court also offered a specific curative instruction, which the defense rejected. While evidence of prior bad acts could have been prejudicial to Cardenas-Mendoza, the prosecutor's allusion to prior bad acts without supporting evidence and coupled with the court's instruction is not clearly prejudicial. Thus, the district court did not abuse its discretion when it determined that curative instructions rather than a mistrial were the proper remedy for the government's improper opening remarks.

III

Cardenas-Mendoza next argues that the district court erred when it failed to compel disclosure of the TECS hit notice under Fed. R. Crim. P. 16 and the Confrontation Clause. The district court's discovery rulings are reviewed for abuse of discretion, *United States v. Gonzalez-Rincon*, 36 F.3d 859, 865 (9th Cir. 1994), while Confrontation Clause challenges based, as here, on the exclusion of an area of inquiry are reviewed de novo. *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007) (en banc).

**[3]** Fed. R. Crim. P. 16(a)(1)(E) provides that the government must permit the defendant to inspect and copy or photograph items in its possession, custody or control if: "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to defendant." Because the TECS notice was never in Cardenas-Mendoza's possession and the government did not use the notice itself in its case-in-chief, Cardenas-Mendoza had to demonstrate that the TECS hit notice was material to his defense. The district court found that while the existence of the notice was material, its con-

tents were collateral. The only material use of the TECS notice was its existence, which did not require disclosure. The district court did not abuse its discretion in failing to compel disclosure of the TECS hit notice, as disclosure was not required under Fed. R. Crim. P. 16.

**[4]** Cardenas-Mendoza's Confrontation Clause argument is without merit. He argues that the TECS notice would have assisted him in cross-examining certain government witnesses, but that alone does not amount to a Confrontation Clause violation. The Confrontation Clause guarantees that an accused can conduct an effective cross-examination of a witness offered against him or her. *Larson*, 495 F.3d at 1102. The Confrontation Clause does not, however, require the government to disclose all documents that might be helpful on cross-examination. *Coleman v. Calderon*, 150 F.3d 1105, 1112 (9th Cir. 1998) *rev'd on other grounds sub nom. Calderon v. Coleman*, 525 U.S. 141 (1998). In this case, failure to disclose what the district court determined to be collateral evidence did not restrict Cardenas-Mendoza's ability to cross-examine various government witnesses. Accordingly, we affirm the district court's decision not to compel disclosure of the TECS hit notice.

## IV

We next consider whether the district court erred when it failed to impose sanctions under the Jencks Act, 18 U.S.C. § 3500. A district court's Jencks Act rulings are reviewed for abuse of discretion. *United States v. Alvarez*, 358 F.3d 1194, 1210 (9th Cir. 2004). We review an erroneous decision not to impose sanctions under the Jencks Act for harmless error. *United States v. Carrasco*, 537 F.2d 372, 377 (9th Cir. 1976). For the following reasons, we conclude that the district court erred when it did not strike the testimony of Agent Huerta, but we nonetheless affirm because the error was harmless.

A

**[5]** As an initial matter, the government argues that it was not obligated to disclose Agent Huerta's grand jury testimony because the transcript was never in its possession.[1] The government asserts that because the court reporter retained the tapes at the conclusion of the grand jury proceedings and did not create a transcript before his death, the government did not possess the transcript for purposes of the Jencks Act. We are unpersuaded. "Possession" does not require physical custody. *See United States v. Wallace*, 848 F.2d 1464, 1470 (9th Cir. 1988) (recognizing that the government possessed witness's notes as soon as it realized the witness was using the notes to testify before a grand jury). Fed. R. Crim. P. 6(e)(1) requires the government to retain control of grand jury recordings unless the court orders otherwise. In this case, the court reporter had permission to retain physical custody of the tape. But that permission did not relieve the government of its obligation to maintain the recording. Because Fed. R. Crim. P. 6(e)(1) charges the government with retaining recordings of grand jury proceedings, it is in possession of the court reporter's notes or audio tapes as soon as the recording occurs.

B

**[6]** Jencks Act sanctions are triggered when the government does not provide a witness's statement properly requested under the act. *United States v. Well*, 572 F.2d 1383, 1384 (9th Cir. 1978). Ordinarily, sanctions are mandatory, and the district court must either strike the testimony of a witness whose statement is not produced or, alternatively, declare a mistrial.

---

[1] Under the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Act specifically includes grand jury testimony within its provisions. *See* 18 U.S.C. § 3500(e)(3).

But the district court has some discretion not to impose sanctions in limited circumstances. A district court can decide not to strike a witness's testimony where the government acted in good faith *and* where a substitute for the missing statement is available. *United States v. Echeverry*, 759 F.2d 1451, 1456 (9th Cir. 1985); *United States v. Finnegan*, 568 F.2d 637, 642 (9th Cir. 1977).

**[7]** While the defendant must show she or he is prejudiced by the missing statement when the government acts in good faith, *see United States v. Angelini*, 607 F.2d 1305, 1308 (9th Cir. 1979), prejudice exists when no acceptable substitute or summary of the missing statement is available. *Carrasco*, 537 F.2d at 376. Contrary to the district court's ruling here, the government's good faith alone does not excuse production under the Jencks Act. *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976); *United States v. Riley*, 189 F.3d 802, 806 (9th Cir. 1999) (affirming denial of sanctions under the Jencks Act where the government could not produce a statement it had destroyed in good faith and no substitute was available); *Carrasco*, 537 F.2d at 376 ("Good faith is the norm from which neither adverse inferences nor benefits flow.").

**[8]** The government argues that the district court properly declined to impose sanctions because the government was not at fault for the loss of the grand jury testimony. Given that Fed. R. Crim P. 6(e)(1) specifically entrusts the government with the responsibility to maintain records of grand jury testimony, however, the government is not accurately depicted as blameless here. *See United States v. Montgomery*, 210 F.3d 446 (5th Cir. 2000) (finding Jencks Act applied where court reporter, who was in physical possession of grand jury transcript, could not be located). Although we have found no abuse of discretion in a district court's refusal to impose sanctions for an inadvertent failure to disclose Jencks material, in these cases some substitute for the material was made avail-

able to the defendant. *See Etcheverry*, 759 F.2d at 1456; *Finnegan*, 568 F.2d at 642.

**[9]** Here, no substitute for the missing grand jury transcript was available and because of that, we cannot know the contents of Agent Huerta's testimony. The government argued that, to the best of its knowledge, the testimony at the grand jury hearing "was likely not very lengthy," and that the likely subjects included the defendant's contact with the agents at the border and the discovery of methamphetamine. The government admits, however, that it "cannot confirm that this was Agent Huerta's testimony."

**[10]** Agent Huerta testified before the grand jury on October 19, 2005, less than a month after Cardenas-Mendoza was arrested at the border. His memory of Cardenas-Mendoza's arrest was likely fresh enough for him to have testified beyond the scope of his written report, unlike during trial, where he relied on his writings to testify. Without guessing about the content of his grand jury testimony, it is no strain to conclude that it may have contained an extemporaneous account of the arrest—an account not available through the agent's written notes or report.

**[11]** Although the government acted in good faith, no substitute for the missing statement could be produced. Accordingly, the district court erred when it did not strike Agent Huerta's testimony under the Jencks Act.

### C

**[12]** Error alone is not enough to vacate Cardenas-Mendoza's conviction—we will reverse only if the error was not harmless. *Carrasco*, 537 F.2d at 377. We have found a Jencks Act error not to be harmless when the witness's testimony was key to the prosecution's case. *Riley,* 189 F.3d at 806. On the other hand, the error is harmless if the independent evidence of guilt is strong enough to sustain the defen-

dant's conviction beyond a reasonable doubt, *Carrasco*, 537 F.2d at 377, and the defendant's explanation for what happened is "contradicted by overwhelming evidence." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1198 (9th Cir. 2000); *see also United States v. Smith*, 561 F.3d 934, 938-39 (9th Cir. 2009).

**[13]** Here, Agent Huerta's testimony played only a small part in the government's case. Agent Huerta's testimony helped the government establish an element of the prosecution's case: that Cardenas-Mendoza knew drugs were in his vehicle when he crossed the border. But other evidence offered by the government also demonstrated that Cardenas-Mendoza knew the drugs were in his vehicle. First, Officer Costa's testimony was practically identical to Agent Huerta's. While two agents testifying consistently provides stronger evidence than the testimony of one agent, the testimony of one agent still carries weight. Furthermore, the government offered evidence that Cardenas-Mendoza's girlfriend was not surprised when she discovered he had been arrested at the border and evidence that Cardenas-Mendoza was shaking abnormally as he approached the initial inspection point. Officer Costa's testimony combined with independent evidence that Cardenas-Mendoza knew the drugs were in his vehicle supports the jury's verdict.

**[14]** The government also offered evidence that Cardenas-Mendoza's explanation for the drugs in his vehicle—that he was the unknowing dupe of drug smugglers—was implausible. First, a government witness testified that the drug compartment in Cardenas-Mendoza's truck was difficult to construct, making it unlikely that drug smugglers could have constructed the compartment in the brief time Cardenas-Mendoza was not in possession of his vehicle. Furthermore, Cardenas-Mendoza admitted he did not tell anyone where he was going in the United States, which would have made retrieving the drugs difficult for the alleged participants in the drug smuggling plan of which Cardenas-Mendoza denied all

knowledge. Aside from his own testimony, Cardenas-Mendoza offered no evidence to support his explanation.

**[15]** Even if the district court had not erred and Agent Huerta had not testified, a reasonable jury would have found Cardenas-Mendoza guilty. Agent Huerta's testimony was corroborated in full by another officer, and all other evidence offered by the government supports the jury's verdict. Accordingly, the district court's error in refusing to strike Agent Huerta's testimony was harmless.

## V

We find the district court erred in refusing to impose sanctions under the Jencks Act. Because the error was harmless, however, we AFFIRM Cardenas-Mendoza's conviction and sentence.