

FILED

NOT FOR PUBLICATION

JUL 26 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10211 |
| Plaintiff - Appellee, | D.C. No. 1:06-CR-00198-SOM |
| v. | |
| MICHA TERRAGNA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10212 |
| Plaintiff - Appellee, | D.C. No. 1:06-CR-00198-SOM |
| v. | |
| KEVIN BRUNN, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10230 |
| Plaintiff - Appellee, | D.C. No. 1:06-cr-00198-SOM-1 |
| v. | |

        *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

DOUGLAS GILMAN, Sr.,

      Defendant - Appellant.

---

UNITED STATES OF AMERICA,      No. 09-10248

      Plaintiff - Appellee,      D.C. No. 1:06-cr-00198-SOM-2

   v.

DOUGLAS GILMAN, Jr.,

      Defendant - Appellant.

---

UNITED STATES OF AMERICA,      No. 09-10257

      Plaintiff - Appellee,      D.C. No. 1:06-cr-00198-SOM-8

   v.

WILLIAM GILMAN,

      Defendant - Appellant.

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted June 17, 2010
Honolulu, Hawaii

Before: B. FLETCHER, PREGERSON, and CLIFTON, Circuit Judges.

This is the consolidated appeal of several convictions related to a cockfighting and gambling operation. There are five appellants: Micha Terragna, Kevin Brunn, Douglas Gilman, Sr., Douglas Gilman, Jr., and William Gilman. Each raises several arguments. We affirm on most issues, but we vacate William Gilman's sentence and remand for resentencing because the district court imposed a "manager or supervisor" enhancement in calculating the appropriate advisory guidelines range without resolving the factual dispute over the PSR's assertion that William Gilman supervised another participant in the gambling business.

## I. Brunn's and Terragna's Motions to Suppress

Terragna and Brunn argue that the district court should have suppressed certain statements that each made while the FBI was conducting a search of their home. As all parties agree, they had not been given warnings in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). We review de novo the denial of a motion to suppress statements that may have been obtained in violation of *Miranda* and review any underlying factual determinations for clear error. *See United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 855 (9th Cir. 2005). We give special deference to a district court's credibility determinations where, as in this case, a suppression hearing was held. *See United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008).

Neither Brunn nor Terragna were in custody when they made the statements at issue. While the number of law enforcement personnel that were present weighs in favor of determining that they were in custody, the remainder of the *Craighead* factors do not. *See id.* at 1084. Brunn and Terragna were repeatedly told that they were not under arrest and would not be placed under arrest at the conclusion of the search. Brunn, himself a police officer, was allowed to spend time freely at the scene with someone he knew. Neither Terragna nor Brunn was physically restrained. And Terragna freely walked in and out of the house during the search and was able to feed her child. These circumstances are far different from those in *Craighead*, where Craighead was "escorted to a back room and the door was closed behind him," an armed and armored detective appeared to be blocking Craighead's exit from the room, and Craighead's "emotional support" was excluded from the room. *See id.* at 1084–89.

## II. The Sufficiency of the Indictment as to Brunn

Brunn challenges the sufficiency of Counts 4–8 of the indictment. We review de novo. *See United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the

4

defendant of the charge and to enable him to plead double jeopardy." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (citation and internal quotation marks omitted). The relevant counts of the indictment were sufficient in this case. They adequately informed Brunn of the elements of the charge—indeed, they reproduced those elements almost verbatim—and they would have enabled him to plead double jeopardy if such a plea were appropriate.

Brunn makes four specific arguments, but none are persuasive. First, Brunn's reliance on *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), is misplaced. In *Cecil*, the only specific allegations in the indictment were that the defendants were conspirators and that the conspiracy took place in Arizona, Mexico, and elsewhere. *Id.* at 1296–97. Brunn's indictment, in contrast, specified who took what from whom, and how and when, with detail.

Second, it does not matter whether Brunn said, "whatever you like give me" or, "whatever you like imagine" when he was speaking to Charles Gilman. The threatening part of his statement was when he said, "just rememba, as you sitting in OCCC, you cannot do nothing, right?" Besides, liability for conspiracy requires only that one of the conspirators perform an overt act. *See United States v. Mincoff*, 574 F.3d 1186, 1198 (9th Cir. 2009). No matter what Brunn said to Gilman, the indictment charged that Brunn and Terragna entered into a conspiracy and listed

5

several overt acts that Terragna performed in furtherance of that conspiracy. Even without the challenged statement, the indictment would have been sufficient, so Brunn suffered no prejudice from any transcription error.

Third, that the indictment did not detail exactly which official acts Brunn did not perform after extorting money did not make it insufficient. An indictment need not set forth all of the evidence to be proved at trial; both implication and common sense may serve to fill any gaps. *See United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993); *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982). The indictment was sufficient in that it alleged that Brunn was a police officer, that he knew of Charles Gilman's criminal activity, and that he both threatened Gilman and, in exchange for money, omitted some act that a police officer with knowledge of criminal activity would ordinarily perform.

Finally, the indictment was sufficient despite not giving details about other conspirators who were "known and unknown to the Grand Jury." First, a conspiracy in which only Terragna and Brunn were involved would still be a conspiracy. Second, the Government's "concession" that only Brunn and Terragna were involved was no such thing. The statements that "just Terragna and Brunn are charged" and that "just the two are charged" meant only that those two (and not the Gilmans) were charged. It did not mean that no one else was involved. The

6

Government is not required to indict every conspirator. *See, e.g.*, *United States v. Sangmeister*, 685 F.2d 1124, 1127 (9th Cir. 1982).

## III. The *Batson* Challenges

All five defendants challenge the district court's acceptance of the Government's race-neutral justifications for its peremptory strikes of three prospective jurors. "[I]f the prosecutor offers a race-neutral explanation, the trial court must decide whether the defendant has proved the prosecutor's motive for the strike was purposeful racial discrimination." *United States v. Guerrero*, 595 F.3d 1059, 1062 (9th Cir. 2010). After a prosecutor has advanced a race-neutral explanation, "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). This decision requires a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Batson v. Kentucky*, 476 U.S. 79, 93 (1986) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). We review the district court's acceptance of a race-neutral justification for clear error. *See Miller-El*, 537 U.S. at 341.

In this case, as in most cases, the best evidence of the prosecutor's intent is his demeanor. *See id.* at 339. The district court explicitly found the prosecutor credible. That finding is entitled to "great deference" by this court, *id.* at 341,

7

because "evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Id.* at 339 (internal quotation marks omitted). Defendants offered no evidence to impugn the prosecutor's credibility, and we conclude that the district court did not clearly err in crediting the prosecutor's race-neutral explanations for his peremptory strikes.

**IV. The Timing of *Brady* Disclosures**

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the Government must disclose to the defense any "information in the possession of the prosecutor and his investigating officers that is helpful to the defendant." *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009) (emphasis omitted). "The three elements of a *Brady* violation are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008) (internal quotation marks and alterations omitted). "We review *de novo* claims of *Brady* violations." *Id.* at 1202 n.12.

Defendants claim that the Government committed a *Brady* violation by disclosing too late certain FBI interview reports ("302s") revealing that John Saguibo, a key Government witness, worked as a confidential informant or

8

confidential source for local police officers in an arguably related precursor investigation. We assume without deciding that the relevant reports were impeachment material that the Government should have disclosed. *See generally United States v. Ochoa-Sanchez*, 676 F.2d 1283, 1288 (9th Cir. 1982) ("[D]efendant conducted a meaningful cross-examination using impeaching information that the witness was an informant and had assisted the government in other cases.").

Although we do not condone the piecemeal manner in which the prosecution disclosed the evidence, we conclude that defendants were not prejudiced in this case by the timing of the disclosure. The only specific prejudice defendants identified was their inability to consider an entrapment defense, but any such defense would have been highly implausible based on the evidence in this case. Even if defendants could have put on such a defense, they were not prejudiced by the delayed disclosure of the FBI's reports. For more than two years before trial, defendants had recordings of Saguibo's wiretapped phone conversations that made clear he was a police informant. Defendants were provided with transcripts of those conversations more than a year before trial. At least one defense attorney stated before trial that Saguibo had gathered intelligence for the police. In light of these facts, the district court's finding that defendants had knowledge of Saguibo's

cooperation with the police before trial started was not clearly erroneous. The delayed production of cumulative evidence of that cooperation was not prejudicial. *See Rhoades v. Henry*, 598 F.3d 495, 504 (9th Cir. 2010).

Moreover, when the Government turned over the evidence under court order, defendants still had time to prepare for cross-examination. The Government need not turn over *Brady* evidence before trial as long as the disclosure is "made at a time when [the] disclosure would be of value to the accused." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991). In this case, the last of the FBI reports was turned over two weeks before Saguibo was cross-examined. We conclude that there was no *Brady* violation because defendants were not prejudiced by the timing of the disclosure in this case. *See Rhoades*, 598 F.3d at 504.

## V. The Jencks Act Challenge

Defendants argue that under the Jencks Act, 18 U.S.C. § 3500, the Government should have turned over 302s that the FBI produced following interviews with witness Charles Gilman, even though the Government had already produced the notes from which the reports were created—notes that Charles Gilman had adopted as his own statement. "A district court's Jencks Act rulings are reviewed for abuse of discretion." *United States v. Cardenas-Mendoza*, 579 F.3d 1024, 1031 (9th Cir. 2009).

10

On its own terms, the Jencks Act applies only to a "statement . . . of the witness," not a report derived from such a statement. 18 U.S.C. § 3500(b). In this case, Charles Gilman verified the notes as his own statement when they were read back to him, but he never adopted a 302 report based on those notes. We have held that the Government need not produce interview notes as long as it turns over a report based on those notes and the witness has adopted the report as his own statement. *See United States v. Reed*, 575 F.3d 900 (9th Cir. 2009). The same reasoning applies, *a fortiori*, where the verified notes themselves are turned over in lieu of any subsequently created reports that were not verified by the witness. *See United States v. Boshell*, 952 F.2d 1101, 1104–5 (9th Cir. 1991) (holding that there was no Jencks Act violation where the relevant notes "were not a substantially verbatim recital of [the witness's] oral statement, nor were they seen, signed or adopted by [the witness]").

Even if the district court had erred in declining to order the disclosure of the 302s, reversal would be inappropriate in the absence of prejudice to defendants. *See Boshell*, 952 F.2d at 1105. Because the interview notes that defendants received included Charles Gilman's substantially verbatim statements, defendants were not prejudiced by the Government's failure to produce formal summaries of those statements. *See United States v. Riley*, 189 F.3d 802, 807 (9th Cir. 1999)

11

("[W]e have not required that testimony be stricken where a substitute for the missing statement was available.").

## VI. The Denial of Motions for a Continuance

On several occasions, defendants moved for a continuance to obtain the impeachment evidence they sought from the Government or to process the evidence they had already received. We review the district court's denial of a continuance for abuse of discretion. *United States v. Orlando*, 553 F.3d 1235, 1237 (9th Cir. 2009). That review requires us to consider four factors:

> (1) the extent of appellant's diligence in his efforts to ready his defense prior to the date set for hearing, (2) how likely it is that the need for a continuance could have been met if the continuance had been granted, (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party, including witnesses, [and] (4) the extent to which the appellant might have suffered harm as a result of the district court's denial.

*United States v. Mejia*, 69 F.3d 309, 314 (9th Cir. 1995) (alterations omitted). The first and third factors weigh against defendants in this case, and the fourth factor—the requirement of prejudice—is decisive. "[I]n order to obtain a reversal, appellant must show at a minimum that he has suffered prejudice as a result of the denial of his request." *Id.* at 314–15. Because the defendants suffered no prejudice from the timing or absence of the disclosures they sought under *Brady* and the

Jencks Act, we conclude that the district court did not abuse its discretion in denying defendants' motions for a continuance.

## VII. The Request for a Specific Unanimity Instruction

Defendants argue that the district court should have specifically instructed the jury that to satisfy the statutory definition of an illegal gambling business under 18 U.S.C. § 1955, all members of the jury would have to agree that the same five participants were involved in the business for the same 30-day period. Defendants did not request such an instruction, so the court's decision not to issue one is reviewed for plain error. *United States v. Treadwell*, 593 F.3d 990, 996 (9th Cir. 2010).

"Usually a general unanimity instruction suffices." *United States v. Gilley*, 836 F.2d 1206, 1211 (9th Cir. 1988). This case is no exception. The court's decision not to issue a specific unanimity instruction *sua sponte* was not plainly erroneous, because this case was "sufficiently simple and clear in its presentation that unanimity can be assumed based on the general instruction," *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983), *quoted in Gilley*, 836 F.3d at 1212. Unlike *Gilley*, this case posed no serious risk of jury confusion. This case dealt with one cast of characters involved in a single gambling business that operated (during the relevant time period) at just one location. Under those circumstances

13

the district court's decision not to issue a more specific unanimity instruction did not "prejudice[] the defendant[s'] substantial right to a unanimous jury verdict as granted by Article III, § 2, and the Sixth Amendment." *Gilley*, 836 F.3d at 1212.

## VIII. The District Court's Response to the Jury's Question Concerning Counts 5–8

The jury asked the district court to clarify its instruction concerning Counts 5–8, and both Brunn and Terragna objected to the district court's response. We generally review a response to a jury's inquiry for abuse of discretion, but we review de novo whether an instruction misstates the law or violates due process. *See United States v. Verduzco*, 373 F.3d 1022, 1030 n.3 (9th Cir. 2004).

Brunn's argument is that the district court's instructions, as clarified by the court's response, would have allowed the jury to "convict[] both Brunn and Terragna as aiding and abetting in the substantive Hobbs Act counts without establishing that some principal had the requisite intent." That is not true; the instructions on aiding and abetting to which the district court referred the jury explicitly stated that the Government had to prove that the underlying offense had been "committed by someone." Brunn's argument therefore fails. *See United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir. 1995) ("The jury instruction was not so misleading that the jury would have believed it could convict one or both

14

defendants of aiding and abetting without believing that the law had been violated.").

Terragna's argument is similarly problematic. She argues that the district court's response to the jury's query would have allowed the jury to convict Terragna of aiding and abetting without ever finding that a principal had committed the underlying offenses. But as mentioned above, the district court's instructions required the Government to prove that the underlying offense had been committed. Moreover, the district court's response stated that the jury could not convict Terragna of aiding and abetting Brunn unless they found that Brunn had "indeed committed the crime."

## IX. The Sufficiency of the Evidence against Terragna and Brunn

Both Terragna and Brunn challenge the sufficiency of the evidence to convict them of certain counts. We review sufficiency-of-the-evidence challenges in two steps. First, we "must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). This requirement precludes the extensive reweighing and selective examination of facts in which both appellants' briefs engage. Our second task is to determine whether the "evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a

15

reasonable doubt.'" *Id.* (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Terragna challenges the sufficiency of the evidence to convict her of Counts 1–3. To convict Terragna of each conspiracy count, Counts 1 and 3, the Government had to prove that she entered the conspiracy and that at least one conspirator performed at least one overt act in furtherance thereof. *See Mincoff*, 574 F.3d at 1198. To convict her of Count 2, the Government had to prove that she conducted, financed, managed, supervised, directed, or owned all or part of the illegal gambling business. *See* 18 U.S.C. § 1955.

The evidence presented at trial, taken in the light most favorable to the Government, was sufficient to convict Terragna on all three counts. Particularly relevant was Charles Gilman's testimony that he and Terragna had an agreement to open a cockfighting operation together, his testimony that Terragna received a fourth of the proceeds from the cockfights and $1000 out of every $4500 collected at the gate, John Saguibo's testimony that Terragna was a partner in the cockfights, his testimony that Terragna anticipated being able to set up a new cockfighting operation if she broke away from Gilman, and his testimony that Terragna had advance notice of when the Narcotics/Vice gambling detail would be coming to the cockfights.

16

Brunn challenges his convictions on Counts 3–8. Just as in Terragna's case, to convict Brunn of each conspiracy, the Government had to prove that he entered the conspiracy and that at least one conspirator performed at least one overt act in furtherance thereof. *See Mincoff*, 574 F.3d at 1198. To convict him of the four extortion charges, the Government had to prove that he (1) in any way or degree obstructed, delayed, or affected commerce (2) by extortion, which is (3) the obtaining of property from another, (4) with his consent, (5) induced by wrongful use of (a) actual or threatened force, violence, or fear, or (b) under color of official right. *See* 18 U.S.C. § 1951.

Just as with Terragna, the evidence against Brunn was sufficient to convict him. Particularly relevant was Charles Gilman's testimony that Brunn sent a patrol vehicle to park in front of the cockfights to teach Charles Gilman a lesson, Charles Gilman's testimony that he made payments to Terragna and Brunn because he feared that Brunn would send police to the cockfights to stop them, and John Saguibo's testimony that Brunn attended a meeting with Charles Gilman and Bryson Apo where they discussed the cockfights and keeping quiet about bribes that were being paid to police officers.

17

## X. Whether Count 4 Merged with Counts 5–8 as to Terragna

Terragna argues that the district court should have entered a judgment of acquittal for Counts 5–8 (which alleged that she aided and abetted Brunn's extortion from Charles Gilman) because the jury found her not guilty of Count 4 (which alleged a conspiracy to extort money from Gilman). We review the denial of a motion for acquittal de novo. *See United States v. Sutcliffe*, 505 F.3d 944, 959 (9th Cir. 2007).

In general, a defendant can be convicted both for a conspiracy to commit a crime and for committing that crime. *See Pinkerton v. United States*, 328 U.S. 640, 643–44 (1946). Wharton's Rule is a judicial presumption against dual prosecutions for conspiracy and certain substantive crimes: those that necessarily entail an agreement between two people, such as adultery, incest, bigamy, and dueling. *See Iannelli v. United States*, 420 U.S. 770, 773–74 & n.5, 782–83 (1975). Terragna argues that Wharton's Rule should have precluded dual prosecutions for conspiracy and aiding and abetting.[1] But the rule does not apply to the crime of aiding and abetting. That crime does not require an agreement, so it can be charged

---

[1]Terragna does not mention Wharton's Rule by name in her brief, but her attorney did so at the hearing concerning Terragna's posttrial motion for acquittal.

and punished separately from conspiracy. *See United States v. Huber*, 772 F.2d 585, 591–92 (9th Cir. 1985).

**XI. Leadership Role Enhancements**

The Gilmans each challenge the sentence enhancements they received for holding leadership roles in the gambling business. We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Stoterau*, 524 F.3d 988, 997 (9th Cir. 2008) (quoting *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)).

The Gilmans argue that their sentence enhancements resulted from impermissible double counting because both the crime of conducting an illegal gambling business and the adjustment for holding a leadership position in a criminal activity require at least five participants. 18 U.S.C. § 1955; U.S.S.G. § 3B1.1. The enhancement does not involve double counting because it includes an element distinct from the crime itself, namely a leadership role. "If . . . it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not

19

necessarily have been set to capture the full extent of the wrongfulness of such behavior." *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993). A leadership role is not a necessary element of the crime of "conduct[ing], financ[ing], supervis[ing], direct[ing], or own[ing] all or part of an illegal gambling business." 18 U.S.C. § 1955. It is possible, for example, to finance such a business without organizing, leading, managing, or supervising it. Thus, the application of the leadership role adjustment does not involve impermissible double counting.

Douglas Gilman, Sr., challenges the factual basis for the district court's imposition of a four-point enhancement for his role as an "organizer or leader" of the gambling business. Even if Douglas Gilman, Sr., were correct that he did not own the business or receive the largest share of the proceeds, the enhancement would still be appropriate based on evidence in the record that he directed Charles Gilman to set up the tent, ordered the payoffs to Terragna, and parceled out to the workers tips from gamblers who sat in the shade of the tent. On this evidence, the district court's finding that Douglas Gilman, Sr., was an organizer or leader was not clearly erroneous.

William Gilman also challenges the factual basis for his three-point "manager or supervisor" adjustment. The court relied on evidence that William operated dice tables, received proceeds from the chicken fights, and could choose

20

his method of payment.[2] This evidence did not necessarily mean that he qualified for the "manager or supervisor" adjustment. "To qualify for an adjustment under [U.S.S.G. § 3B1.1], the defendant must have been the organizer, leader, manager, or supervisor *of one or more other participants*." U.S.S.G. § 3B1.1 cmt. n.2 (emphasis added). We must vacate a sentence that imposes this enhancement absent evidence that the defendant supervised another participant. *See United States v. Woods*, 335 F.3d 993, 1001–02 (9th Cir. 2003).

In determining whether the requirement of supervising another participant has been met, "the court must focus on what the defendant did, in relation to at least one other participant, in the commission of the offense." *United States v. Jordan*, 291 F.3d 1091, 1098 (9th Cir. 2002) (emphasis omitted) (quoting *United States v. Frankhauser*, 80 F.3d 641, 655 (1st Cir. 1996)). The district court examined the evidence concerning what William did in relation to the business's customers, but pointed to no evidence that he supervised another participant in the

---

[2]The probation office recommended William Gilman's "manager or supervisor" adjustment based on a disputed portion of the presentence report. The district court did not clearly rule on the dispute, but we conclude that the district court complied with Rule 32 by indicating that it would "proceed with the understanding that William Gilman was not involved in putting up or taking down . . . the equipment that was used at the chicken fights." *See* Fed. R. Crim. P. 32(i)(3) (allowing the district court to avoid ruling on a disputed portion of the presentence report by deciding that "the court will not consider the matter in sentencing").

business. The customers who placed bets at William's table were not "participants" in the illegal gambling business. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Woods*, 335 F.3d at 1001 (quoting U.S.S.G. § 3B1.1 cmt. n.1). Thus, the district court erred by imposing the "manager or supervisor" enhancement in calculating the advisory guideline range for William. We vacate his sentence and remand to the district court for resentencing. *See Jordan*, 291 F.3d at 1099.

## XII. Cumulative Error

The district court made no errors beyond applying a three-level enhancement to William Gilman's offense level, as described above. As a result, there was no prejudicial effect of minor errors to accumulate. *See, e.g.*, *United States v. Jeremiah*, 493 F.3d 1042, 1047 (9th Cir. 2007).

## XIII. Conclusion

We affirm in full as to Defendants Micha Terragna, No. 09-10211; Kevin Brunn, No. 09-10212; Douglas Gilman, Sr., No. 09-10230; and Douglas Gilman, Jr., No. 09-10248. We affirm William Gilman's judgment of conviction, vacate his sentence, and remand his case, No. 09-10257, for resentencing.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**