**UNITED STATES of America, Appellee,**

v.

**John Earl JORDAN, Defendant–Appellant,**

**Clarence Jackson, Defendant.**

**No. 502, Docket 88–1032.**

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1990.

Decided Feb. 14, 1991.

As Modified on Grant of Rehearing April 1, 1991.

---

Colleen P. Cassidy, The Legal Aid Society, New York City, for defendant-appellant.

Mark J. Stein, Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty., Vincent L. Briccetti, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before NEWMAN and PRATT, Circuit Judges, and GRIESA, District Judge.*

JON O. NEWMAN, Circuit Judge:

Section 2(b) of the Criminal Code makes a person liable as a principal for "willfully caus[ing] an act to be done which if directly performed by him or another would be an offense against the United States." 18 U.S.C. § 2(b) (1988). This appeal presents the apparently novel issues of whether a defendant may be liable for a substantive offense (a) as an aider or abetter of a "causer," and (b) as a co-conspirator of a "causer" under the *Pinkerton* theory, *see Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The issues arise on an appeal by John Earl

Jordan from the January 11, 1988,[1] judgment of the District Court for the Southern District of New York (John E. Sprizzo, Judge) convicting him, after a jury trial, of conspiracy and substantive narcotics offenses. We affirm the conviction, but remand for a minor correction of the sentence.

## Facts

Jordan was charged with two conspiracy and two substantive counts. Count 1 charged a conspiracy with others, including Savaneeya Batton, to import heroin from Thailand, in violation of 21 U.S.C. § 963 (1988); Count 2 charged a conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846 (1988); Count 3 charged importation of 2.4 kilograms of heroin, in violation of 21 U.S.C. §§ 812, 952(a), 960, and 18 U.S.C. § 2; and count 4 charged possession with intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) (1988), and 18 U.S.C. § 2.

The evidence disclosed a heroin importation conspiracy orchestrated by "Ike" Atkinson, an inmate at the Federal Correctional Institution at Otisville, New York. Atkinson, through his brother, learned of the availability of a "Mr. Wolfgang," who was believed to be a diplomatic courier, but who was really an undercover agent of the Drug Enforcement Administration. Atkinson and Jordan had a series of conversations with Batton, who agreed to travel to Thailand to purchase heroin. Ultimately Batton told Jordan that she would purchase the heroin in Thailand if someone else would bring it to the United States. Jordan reported Batton's proposal to Atkinson, who immediately contacted "Mr. Wolfgang" and arranged for him to pick up heroin from Batton in Thailand and bring it to New York. Atkinson then told Jordan that the "problem" had been "solved."

---

* The Honorable Thomas P. Griesa of the District Court for the Southern District of New York, sitting by designation.

1. The delay in argument of this appeal was occasioned by the unsuccessful effort of prior counsel to have the appeal summarily adjudicated on the basis of a brief filed pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Jordan supplied Batton with money for air fare and for the heroin purchase. Batton flew to Thailand, purchased 2.4 kilograms of heroin, and delivered it to the DEA undercover agent in Bangkok. Following the conspirators' instructions, the agent brought the heroin to New York and delivered it to Atkinson's brother, Wade. Just prior to being arrested, Wade told the agent that he had to deliver the heroin the next day to Washington, D.C., where, the jury could find from prior conversations, it was to be handed over to Jordan for eventual resale.

Wade Atkinson's possession of the heroin in New York was the basis for the count charging conspiracy to possess heroin and the count charging the substantive offense of possession with intent to distribute, the theory of the latter offense being that Jordan was in constructive possession of the heroin. The transportation of the heroin from Thailand to New York was the basis for the count charging conspiracy to import heroin and the substantive offense of importation. The substantive importation count is the focus of this appeal.

### Discussion

Because the person who physically carried the heroin from Thailand to New York was a Government agent, the prosecution did not contend that he was the principal, for purposes of the substantive importation offense. Instead, the prosecution argued, and Judge Sprizzo charged the jury, on the theory that Batton was liable as a "causer" of the importation under section 2(b) and that Jordan could be found liable either for aiding and abetting Batton or, under *Pinkerton*, as a member of a conspiracy of which one member, Batton, carried out a substantive offense in furtherance of the conspiracy.[2] Jordan contends that neither aiding and abetting liability nor *Pinkerton* liability may be recognized where the prin-

cipal's liability is that of a "causer" punishable as a principal under section 2(b). We disagree.

■■■ Section 2(b) provides that one who willfully "causes" an act to be done that would be an offense if done by him is "punishable as a principal." 18 U.S.C. § 2(b). *See United States v. Gleason*, 616 F.2d 2, 20 (2d Cir.1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). Batton is thus as liable for the importation as she would have been if she had physically carried the heroin from Thailand to New York. Though appellant characterizes her liability as resting on a "legal artifice," Brief for Appellant at 25, there is nothing artificial about it. She acted in a deliberate way to accomplish the act of importation. The fact that the undercover agent was willing to be used as the instrument of her criminal activity, in order to apprehend her and her confederates, does not detract in any way from her criminal responsibility. She is as liable for the offense of importation as she would be if she had surreptitiously slipped the heroin into the handbag of an unsuspecting passenger. Since the law quite properly recognizes her liability for the offense of importation, which Jordan does not challenge, we see no reason why he should not be equally responsible for aiding and abetting her in the commission of the offense. "Causation" is not some attenuated relationship between offender and offense. The "causer" is punishable as a principal for willful action that brings about an offense. Those who aid and abet the "causer" cannot expect insulation from criminal responsibility.

The absence of any prior decision squarely rejecting a claim that a "causer" may not be the principal of one who aids and abets indicates only that the claim has been thought too insubstantial to advance, not that it has any force. A defendant's liabili-

---

**2.** In view of the way the prosecution submitted to the jury Jordan's liability for the substantive importation offense, we need not consider whether Batton's actions in purchasing the heroin and handing it to a courier about to board a flight to New York or "Ike" Atkinson's actions in arranging for the heroin to be brought to New

York could have been found to render either of them directly liable under 18 U.S.C. § 2(a) (1988) as one who "commits" the offense of importation. The prosecution apparently assumed that a person could not "commit" the importation offense unless that person physically brought the heroin into the United States.

ty for aiding and abetting a "causer" was upheld by the Supreme Court in *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), though the claim now advanced by Jordan was apparently not raised. In that case, Pereira was liable for having caused the substantive offenses of mail fraud and transportation of stolen property, 18 U.S.C. §§ 1341, 2314 (1948 Supp. V). 347 U.S. at 8–9, 74 S.Ct. at 362–363. A co-defendant, Brading, was convicted on the theory that he aided and abetted Pereira. *Id.* at 9–10, 74 S.Ct. at 363–364. The Supreme Court upheld Brading's convictions, finding the evidence sufficient to support the jury's findings that Pereira caused the offenses to occur and that Brading aided and abetted him. The legal adequacy of the relationship between the aider and abetter and the "causer" was apparently not deemed sufficiently troublesome to merit explicit comment. The three dissenters thought the evidence was insufficient to show that Brading could reasonably foresee that Pereira would cause the pertinent checks to be placed in the mails or to be sent across state lines, but expressed no reservation about the criminal liability of a defendant for aiding and abetting a "causer." *See id.* at 13–16, 74 S.Ct. at 365–367 (Minton, J., with whom Black and Douglas, JJ., join, dissenting in part). In the pending case, there is no doubt that the evidence permitted the jury to find that Jordan was aware that Batton would cause the heroin to be imported into the United States. He advanced her the money for that precise purpose.

■ Similarly, we see no reason to question Jordan's liability under the *Pinkerton* theory simply because the person punishable as a principal was a "causer" and not, in the Government's view, the person who actually committed the offense. Though it is sometimes mischaracterized, *Pinkerton* is not a broad principle of vicarious liability that imposes criminal responsibility upon every co-conspirator for whatever substantive offenses any of their confederates

commit. On the contrary, in the very decision in which the principle was articulated, co-conspirator liability was carefully confined to substantive offenses that are (a) committed "in furtherance of the conspiracy," and (b) "reasonably foresee[able]" by the co-conspirator sought to be held responsible "as a necessary or natural consequence of the unlawful agreement." *Pinkerton*, 328 U.S. at 647–48, 66 S.Ct. at 1184–85. Though we have stated that we would not extend *Pinkerton* to "acts of an unindicted coconspirator who is also a government agent," *United States v. Cambindo Valencia*, 609 F.2d 603, 639 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980), we see no reason not to permit its use in this case. Batton's offense of causing the importation was plainly taken in furtherance of the conspiracy and was just as plainly foreseeable by Jordan. The *Cambindo Valencia* dictum properly serves as a caution against any attempt to impose *Pinkerton* liability upon a conspirator for actions of an undercover agent; it does not insulate a conspirator from responsibility for reasonably foreseeable actions of a confederate in causing an agent to commit an offense in furtherance of the conspiracy.[3]

■ Jordan's claim that his trial counsel rendered ineffective assistance largely fails with our rejection of the challenge to the aiding and abetting and *Pinkerton* bases of liability. Jordan particularly complains that his trial counsel did not make a second summation, after the District Court, in a bifurcated proceeding, took verdicts from the jury on the conspiracy charges before charging on the substantive offenses. This procedure was used to accommodate a co-defendant, who successfully contended that he was not responsible for the substantive importation offense because he had withdrawn from the conspiracy prior to the importation. Jordan's trial counsel elected not to make a second summation, informing Judge Sprizzo that he did not see how

---

**3.** *Pinkerton* liability was rejected in *Pereira v. United States, supra,* only because a *Pinkerton* charge had not been given to the jury. 347 U.S. at 10 n. *, 74 S.Ct. at 363 n.*. There was no

suggestion that *Pinkerton* liability may not be imposed upon a co-conspirator for offenses of a "causer."

he could make an argument in the face of the Judge's anticipated instructions. Though an incompetent summation can demonstrate ineffective assistance of counsel, *see Matthews v. United States,* 449 F.2d 985, 987–88 (D.C.Cir.1971), Jordan's lawyer gave a satisfactory summation and cannot be faulted for declining the invitation to address the jury a second time.

We have considered Jordan's remaining challenges to his conviction, both those advanced by his appellate counsel and those he advanced *pro se* when his prior appellate counsel filed an *Anders* brief, and conclude that none has merit.

The judgment of the District Court, including all provisions of the sentence, is affirmed.

On Petition for Rehearing

PER CURIAM:

On the original hearing of this appeal, we affirmed the conviction, but remanded for resentencing so that a term of supervised release could be replaced by a term of special parole, a change acknowledged by the parties to be required in light of then applicable case law, *see, e.g., United States v. Byrd,* 837 F.2d 179 (5th Cir.1988). Five days after our decision, the Supreme Court ruled that the penalty provisions of section 1002 of the Anti-Drug Abuse Act of 1986 ("ADAA") became effective on the date of enactment of the ADAA, October 27, 1986. *Gozlon-Peretz v. United States,* — U.S. ——, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). That section amends 21 U.S.C. § 841(b)(1) (1988) and provides for terms of supervised release. Section 1302 of the ADAA amends 21 U.S.C. § 960(b) (1988), the penalty provisions for the importation offenses of which appellant was convicted, and provides for terms of supervised release. The parties are in agreement that Jordan's offenses, which occurred after October 27, 1986, are governed by the ADAA, and that the sentence, as originally imposed, properly included a term of supervised release.

Accordingly, the petition for rehearing is granted, and the opinion filed February 14, 1991, is modifed by deleting the last two paragraphs and substituting therefor, "The judgment of the District Court, including all provisions of the sentence, is affirmed."