**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

MATEO ESTRADA,
          *Defendant-Appellant.*

No. 05-10500

D.C. No.
CR-03-00247-DFL

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Argued and Submitted
April 3, 2006—San Francisco, California

Filed July 14, 2006

Before: John T. Noonan, Senior Circuit Judge, Jay S. Bybee,
Circuit Judge, and William W Schwarzer,*
Senior District Judge.

Opinion by Judge Schwarzer

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

**COUNSEL**

Tim A. Pori, Law Offices of Tim A. Pori, Vallejo, California, for the defendant-appellant.

Carolyn K. Delaney, Assistant United States Attorney and McGregor W. Scott, United States Attorney, Sacramento, California, for the appellee.

## OPINION

SCHWARZER, Senior District Judge:

Defendant-appellant Mateo Estrada appeals his conviction, after jury trial, of possessing pseudoephedrine knowing, or with reasonable cause to believe, that it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Responding to a report of an accident, a California Highway Patrol (CHP) Officer found an overturned pickup truck with a camper shell on a remote, hilly road in Colusa County. The truck contained 178 pounds of pseudoephedrine pills, as well as 78 gallons of denatured alcohol, a can of acetone, and other paraphernalia suggesting to the officer that the contents were going to be used to make methamphetamine. The CHP officer found Estrada near the overturned truck, conscious but dazed and with a contusion on his forehead.

After sending Estrada to the hospital, the CHP towed the truck and performed an inventory search. Following the search, the truck was released back to the towing company. About two months after the crash, the towing company sold the truck at a lien sale.

During the inventory search, the CHP found a recent receipt from a Home Depot store for several cans of denatured alcohol. One of the officers reviewed video footage from the Home Depot made at the time of the sale indicated on the receipt. The footage was not clear enough to identify Estrada as the customer, but the customer shown was approximately the same height and stature as Estrada, and was wearing a shirt that appeared to resemble the shirt Estrada was wearing at the time of the accident. Investigators were unable to recover fingerprints from the cans of denatured alcohol in the

truck. Fingerprints recovered from a respirator mask and the cardboard boxes holding the pills did not match Estrada's.

Estrada moved to dismiss the indictment contending that the government's destruction of the evidentiary value of the truck was in bad faith. The district court denied the motion.

At trial the government introduced evidence that in a 1994 seizure of items from a storage locker in San Jose, Estrada's fingerprints had been found on a type of flask used in manufacturing methamphetamine. The flask also had a residue of iodide, which suggested that it had been used to manufacture methamphetamine. Also recovered from the storage locker were large amounts of ephedrine (different from pseudoephedrine, but also used to make methamphetamine). Other than the fingerprints on the flask, there was no evidence linking Estrada to the storage locker. Estrada objected to the admission of this evidence, but the district court overruled the objection with a limiting instruction.

The court instructed the jury that the government must prove:

> First: The defendant knowingly possessed pseudoephedrine; Second: Pseudoephedrine is a listed chemical; [and] Third: The defendant possessed it knowing, or having reasonable cause to believe, that it would be used to manufacture methamphetamine.

This instruction tracked the Ninth Circuit Model Jury Instruction — Criminal § 9.23. During deliberations, the jury asked the court: "Can we get any other definition of what it means to knowingly possess pseudoephedrine specifically at the time he had it, or does it mean any substance that can be used to make methamphetamine?" After conferring with counsel, the court gave the following supplemental instruction:

> The government does not have to prove that the defendant knew that the pills were pseudoephedrine.

The government does have to prove beyond a reasonable doubt that the defendant knew, or had reason to know, that the pills would be used to manufacture methamphetamine. The government also has to prove beyond a reasonable doubt that the defendant knew that the pills were in his possession. The government also has to prove beyond a reasonable doubt that the pills were in fact a listed chemical.

You may not find the defendant guilty based upon his knowing possession of either the denatured alcohol or the acetone because these are not listed chemicals.

The jury returned a guilty verdict. On appeal, Estrada argues that the supplemental jury instruction improperly relieved the government of having to prove that he knew the pills were pseudoephedrine, that there was insufficient evidence to prove he knew the pills were pseudoephedrine, that the loss of the truck's evidentiary value violated his due process rights, and that the district court erred in admitting the evidence of his fingerprints on the flask recovered from the 1994 storage locker seizure.

## DISCUSSION

## I.  SUPPLEMENTAL JURY INSTRUCTION

[1] Estrada contends that the supplemental jury instruction was erroneous in failing to require the government to prove that Estrada knew that the substance he possessed was pseudoephedrine. Section 841(c)(2) makes it unlawful for "[a]ny person [to] knowingly or intentionally . . . possess[ ] or distribute[ ] a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance." Estrada argues that for a defendant to knowingly possess something he must know what he possessed, in this case pseudoephedrine. The supple-

mental jury instruction was erroneous, Estrada argues, in telling the jurors that they had to find only that he knew the pills were in his possession, not that he knew they were pseudoephedrine. Estrada does not otherwise challenge the instruction.

Whether a jury instruction misstates elements of the crime is a question of law reviewed de novo. *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997). "[W]here the party fails to object at trial or fails to state distinctly the grounds for the objection, we review only for plain error." *United States v. McIver*, 186 F.3d 1119, 1130 (9th Cir. 1999). Here, the court and counsel engaged in a lengthy conference concerning the text of the supplemental instruction. Counsel for Estrada insisted that the jury would have to find that Estrada knew the pills were pseudoephedrine. The court declined to so instruct but offered counsel the opportunity to research the law overnight. In the end, the court read the instruction to counsel as eventually given; government counsel approved and counsel for Estrada said, "Okay." We therefore review for plain error.

We recently interpreted the *mens rea* requirement of § 841(c)(2) in *United States v. Lo*, 447 F.3d 1212 (9th Cir. 2006). Lo was charged with possession of MDP-2-P, a listed chemical. The court instructed the jury that to find the defendants guilty, the government must prove: "First, that the defendants knowingly possessed MDP-2-P; second, the defendants knowingly possessed it, knowing or having reasonable cause to believe that it would be used to manufacture a controlled substance. It does not matter whether the defendants knew that MDP-2-P was a list chemical." *Id.* at 1229. On appeal, Lo argued that the instruction was erroneous in that it eliminated the first *mens rea* requirement; "knowingly," he contended, modified the term "listed chemical" rather than the term "possession." *Id.*

While recognizing that it was not entirely clear grammatically that "knowingly" does not modify both the phrase "pos-

sesses or distributes" and "listed chemical," we rejected the argument. We did so for two reasons. First, we distinguished *Liparota v. United States*, 471 U.S. 419, 421 (1985), requiring proof under an analogous statute that the defendant knew his conduct was unauthorized by law, on the ground that while there the statute contained no *mens rea* requirement, § 841(c)(2) does contain one. *Id.* at 1230. Second, we noted that Congress adopted the present version of § 841(c)(2), prohibiting the possession and distribution of listed chemicals, by substituting its text for an earlier version prohibiting only the possession of piperidine knowing that it will be used to manufacture phencyclidine. *Id.* at 1230-31. We concluded that it would be unreasonable to infer that when Congress included "knowingly," it meant to add an additional element of required proof. "[I]t seems very unlikely," we observed, "that Congress would have chosen to make prosecution more difficult by requiring proof that the defendant knew that the chemical was a listed chemical, while at the same time seeking to expand the scope of prosecution for the possession and distribution of precursor chemicals . . . ." *Id.* at 1231.

Estrada, unlike Lo, does not contend that the government must prove that he knew the pills were a listed chemical. He argues instead that the government must prove that he knew that the pills were pseudoephedrine. Although his argument takes a route different from Lo's, it arrives at the same barrier. The argument would import a second *mens rea* requirement into the statute: knowledge or reasonable cause to believe that the substance will be used in the manufacture of a controlled substance plus knowledge of the identity of the specific substance possessed.

**[2]** Estrada's argument is foreclosed by *Lo*. *Lo* holds that § 841(c) contains only one *mens rea* requirement and that the term "knowingly" modifies only the phrase "possesses or distributes" and not "listed chemical." What § 841(c) requires the government to prove is (1) that the defendant knew he possessed a substance with knowledge or reasonable cause to

believe that the substance would be used to manufacture a controlled substance, and (2) that the substance was in fact a listed chemical. Because we hold that the district court's instruction was correct, we do not reach Estrada's contention that the evidence was insufficient to prove that he knew the pills were pseudoephedrine.

## II.   DESTRUCTION OF EVIDENCE

[3] Although the truck was not destroyed but instead was sold by the towing company, Estrada argues that his due process rights were violated by the government's bad faith destruction of the evidentiary value of the truck. In *California v. Trombetta*, 467 U.S. 479, 489 (1984), the Supreme Court held that for destruction or loss of evidence to constitute a constitutional violation, "[the] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." In *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the Court further held that where lost or destroyed evidence is deemed to be only potentially exculpatory, as opposed to apparently exculpatory, the defendant must show that the evidence was destroyed in bad faith. We review this claim de novo, but the district court's factual findings are reviewed for clear error. *United States v. Hernandez*, 109 F.3d 1450, 1454 (9th Cir. 1997).

[4] We discern no constitutional violation. As a preliminary matter, it is uncertain whether the truck's evidentiary value was destroyed or lost at all. While unlikely, it is possible that the new owner had not repaired the truck or cleaned out the cab, and Estrada does not appear to have made any effort to track down or contact the new owner. Moreover, the truck itself was not apparently exculpatory evidence. Estrada argues that his initial statements to the police made it clear that the truck was valuable evidence because his story to the police was that he was the passenger in the vehicle, and not the

driver. After the crash, the other individual left the scene, leaving Estrada behind. However, even if an analysis of the truck indicated that Estrada was a passenger in and not the driver of the truck, that would not necessarily show that he did not have possession of the pseudoephedrine.

[5] Given that the truck was at most only potentially exculpatory evidence, Estrada must show bad faith on the part of the government. Here, there is no such showing, as there is no showing that the government knew or intended for the truck to be sold by the towing company, let alone that the government did so with a malicious intent. There was evidence that the officers called the towing company twice to find out whether the towing company still had the truck, but there was no other discussion between the officers and the towing company. Estrada has not shown a due process violation.

## III. ADMISSIBILITY OF THE 1994 FINGERPRINTS

[6] Federal Rule of Evidence 404(b) excludes evidence of prior acts when offered to prove that the individual acted in conformity with those prior acts. However, the rule allows admission of prior acts when offered for other purposes, such as to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

> In making admissibility decisions, the court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

*United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004). Estrada challenges admission of the evidence under the first three prongs of this test, arguing that the evidence of his fingerprints on the triple-neck flask from the 1994 storage

locker seizure did not prove a material point, that ten years was too remote in time, and that there was insufficient evidence to show that he committed any prior act. We review the district court's decision to admit evidence for abuse of discretion. *United States v. Lillard*, 354 F.3d 850, 853 (9th Cir. 2003).

**[7]** There is no merit in Estrada's argument. The fingerprints do help to prove a material point, because his connection to this prior methamphetamine manufacturing operation tends to show that he knew or had reasonable cause to believe that the pseudoephedrine would be used to make methamphetamine. Courts have allowed Rule 404(b) evidence to be admitted where ten years or longer periods of time have passed. *See United States v. Martinez*, 182 F.3d 1107, 1110-11 (9th Cir. 1999) (ten years); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen years); *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (ten years). And while the fingerprints on the flask are insufficient to conclusively show that Estrada committed any prior act, the standard for admissibility is only that the evidence is sufficient to "support a finding that the defendant committed the other act." *Verduzco*, 373 F.3d at 1027; *see also United States v. Ogles*, 406 F.3d 586, 592 (9th Cir. 2005) (stating that "conclusiveness is not the relevant standard"). Here, Estrada was able to argue the sufficiency of the fingerprint in terms of the weight that the jury should give this evidence. The district court also gave a limiting instruction as to this evidence, telling the jurors that they could consider it only as it related to the defendant's intent or knowledge. The district court did not abuse its discretion in admitting this evidence.

## CONCLUSION

For the reasons stated above, the conviction is **AFFIRMED**.