**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CESAR PAOLO UBALDO,
AKA Arvi, AKA Cesar Paolo
Inciong Ubaldo,
*Defendant-Appellant.*

No. 14-50093

D.C. No.
2:12-cr-00037-RGK-2

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 3, 2016
Pasadena, California

Filed June 9, 2017

Before: Diarmuid F. O'Scannlain, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Rawlinson

## SUMMARY[*]

### Criminal Law

The panel affirmed Cesar Ubaldo's conviction for illegally importing weapons into the United States in violation of 18 U.S.C. §§ 371, 922(l), 924(a)(1)(C), and 22 U.S.C. § 2778(b)(2).

The panel held that the district court correctly determined that, considering the language and history of the legislation, the weapons importation statutes, §§ 922(l) and 2778(b)(2), apply extraterritorially.

Applying the aiding and abetting statute to the defendants' conduct, the panel held that the district court properly rejected the challenge to the sufficiency of the evidence to support the jury's verdict.

The panel held that the district court properly denied, after conducting a *Franks* hearing, Ubaldo's suppression motion in which he claimed that the search warrant affidavit contained false and misleading statements.

Rejecting Ubaldo's contention that the district court should have dismissed the indictment due to an agent's failure to preserve text messages, the panel held that the district court did not clearly err in finding that Ubaldo failed to establish bad faith.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court acted within its discretion when it elected to issue a curative instruction rather than granting a mistrial for a purported violation of Fed. R. Crim. P. 16.

The panel held that the district court did not abuse its discretion in admitting evidence regarding Ubaldo's previous smuggling conduct, which was relevant to show his "intent, plan, knowledge or absence of mistake"; or in allowing the government to introduce testimony regarding the capabilities, usage, and source of the weapons. The panel held that any error in allowing the weapons introduced into evidence to remain in display in the courtroom was harmless.

The panel held that the district court adequately instructed the jury regarding the elements of causing the importation of weapons into the United States under 18 U.S.C. § 2(b); and that there is no merit to the defendants' contentions that the district court's willfulness instruction was incomplete, or potentially allowed the jury to convict the defendants for merely facilitating or brokering the deals.

---

**COUNSEL**

David S. McLane (argued), Kaye McLane Bednarski & Litt LLP, Pasadena, California, for Defendants-Appellants.

John Michael Pellettieri (argued), Attorney, Appellate Section; Sung-Hee Suh, Deputy Assistant Attorney General; Leslie R. Caldwell, Assistant Attorney General; Kim

Dammers, Deputy Chief of Litigation, Organized Crime & Gang Division; Margaret Vierbuchen, Attorney, Organized Crime & Gang Division; Criminal Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

## OPINION

RAWLINSON, Circuit Judge:

Cesar Ubaldo (Ubaldo) appeals his conviction after he was found guilty by a jury of illegally importing weapons into the United States in violation of 18 U.S.C. §§ 371, 922(l), 924(a)(1)(C), and 22 U.S.C. §§ 2778(b)(2).[1] Ubaldo makes the following arguments on appeal:

1. The substantive offenses charged, violations of § 992(l) and § 2778(b), do not apply extraterritorially.

2. The evidence was insufficient to establish that Ubaldo caused the illegal importation of weapons into the United States.

3. His motion to suppress should have been granted because the search warrant was obtained through presentation of a false and misleading affidavit.

---

[1] Ubaldo's appeal was joined with an appeal by his co-defendant, Sergio Syjuco (Syjuco). Syjuco subsequently withdrew his appeal. Nevertheless, because the parties adopted each other's arguments and because Syjuco was a co-conspirator, this opinion refers to Syjuco and Ubaldo collectively as "Defendants."

4. The prosecution violated Federal Rule of Criminal Procedure 16 by withholding material evidence.

5. The district court admitted improper character evidence and unduly prejudicial evidence.

6. The district court should have dismissed the indictment because the undercover agent failed to preserve text messages related to the investigation.

7. The district court committed instructional error by improperly instructing the jury on willfulness and causation; failing to instruct the jury that Defendants could not be convicted for acting as brokers; and improperly instructing the jury that Defendants could be convicted on an aiding and abetting theory.

We are not persuaded that any reversible error occurred, and we affirm.

## I. BACKGROUND

### A. Statement of Facts

In 2010, the United States Federal Bureau of Investigation (FBI) initiated an investigation into illegal arms smuggling from the Philippines into the United States. Special Agent Charles Ro (Agent Ro) was sent to the Philippines as an undercover agent. He used the name Richard Hahn and posed as a representative of organizations looking to acquire weapons illegally.

Agent Ro was put into contact with Josh Hahn (Hahn), a broker for weapons suppliers. Hahn introduced Agent Ro to

Roland Dasias (Dasias), who later sold Agent Ro twelve Bushmaster Rifles. After Dasias refused to do any further business with Agent Ro, Hahn introduced Agent Ro to Cesar Ubaldo, also known as Arvi. Agent Ro told Hahn that he was seeking to purchase high-powered weapons for the Mexican Mafia and Mexican drug cartels. Ubaldo stated that he could acquire military vests and high-powered weapons, some of which would come from Camp Crame—a Philippine National Police military base. Ubaldo followed up by emailing Agent Ro a list of firearms his contacts had available for purchase.

Agent Ro returned to the United States soon thereafter, but stayed in contact with Ubaldo about a potential weapons sale. They scheduled a meeting in the Philippines sometime during the week of February 20, 2011. At the meeting, Agent Ro purchased an M82 rifle for $30,000.

The following day, Syjuco called Agent Ro and offered to sell him an M14 assault rifle. Syjuco also informed Agent Ro that he could obtain more M82 rifles, as well as Rocket Propelled Grenades (RPGs) and plastic explosives from Camp Crame.

Agent Ro assured Ubaldo and Syjuco that he could safely store the weapons in the Philippines, but would need help transporting the weapons out of the Philippines. He stated that once the weapons bypassed Philippines Customs, he could smuggle them into California, and from there into Mexico. Ubaldo connected Agent Ro with Arjyl Revereza (Revereza), a contact in Philippine Customs. Syjuco confirmed that Revereza would ensure the weapons bypassed Philippine Customs.

Agent Ro returned to the United States, but remained in contact with Defendants via phone and email. Syjuco emailed his available inventory to Agent Ro. Agent Ro replied that he would be back in the Philippines in early May, and they could discuss further sales at that time. Before arriving, Agent Ro ordered a mortar launcher, a grenade launcher, ten AK-47 assault rifles, and ten grenades.

After these purchases were completed, Agent Ro discussed shipping with Defendants and Revereza. Agent Ro had previously described arranging for a shipping container to arrive at a warehouse for transport to California. Agent Ro agreed to take care of the shipping paperwork, but reiterated the importance of bypassing customs. Revereza advised Agent Ro to label the arms in the container as furniture.

On May 12, 2012, Agent Ro and a few other undercover agents met with Syjuco to prepare the weapons for shipping. Syjuco and his bodyguard helped load the weapons into Agent Ro's vehicle. Syjuco then helped package and transport the weapons to the location of the shipping container. Agent Ro's surveillance team captured Syjuco on video loading the weapons into the shipping container. Agent Ro and other agents filled out a Bill of Lading, completed the shipping documents, labeled the goods as furniture destined for California, and forwarded the Bill of Lading to Revereza.[2]

Before the container was shipped, FBI agents removed the grenades, the plastic explosives, and the weapons' firing pins. The agents then repackaged the weapons, *sans* firing

---

[2] After helping package the weapons, Syjuco sold Agent Ro four ballistic-proof vests he obtained from his supplier in Singapore. These vests were placed in the container as well.

pins, and placed tracking devices on the container. On May 18, 2011, Revereza informed Agent Ro that the container had successfully made it onto the ship. Later, Syjuco sent Agent Ro a text message to see if the shipping was going as planned.

The ship was originally scheduled to travel from the Philippines to Singapore to California. However, the ship was rerouted through China. Special Agent Dennis Lao, the agent overseeing the case, notified FBI agents in China that the container was passing through. Agent Lao also notified United States Customs in California that the ship would be arriving with a container holding inoperable weapons that were part of an ongoing investigation. The container arrived in the United States on June 7, 2011.

## B. Procedural History

Defendants were charged with conspiracy in violation of 18 U.S.C. § 371[3] (count 1), and causing the illegal importation of weapons into the United States in violation of

---

[3] 18 U.S.C. § 371 provides in pertinent part:

> If two or more persons conspire either to commit any offense against the United States . . . in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both. . . .

18 U.S.C. §§ 2,**⁴** 922(l),**⁵** 924(a)(1)(C),**⁶** and 22 U.S.C. § 2778(b)(2) (counts 2–5).**⁷**

---

**⁴** 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**⁵** 18 U.S.C. § 922 (l) provides in pertinent part:

[I]t shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter.

**⁶** 18 U.S.C. § 924(a)(1)(C) provides in pertinent part:

[W]hoever–

knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(l) . . . shall be fined under this title, imprisoned not more than five years, or both.

**⁷** 22 U.S.C. § 2778(b)(2) provides in pertinent part:

(2) Except as otherwise specifically provided in regulations issued under subsection (a)(1) of this section, no defense articles or defense services designated by the President under subsection (a)(1) of this section may be exported or imported without a

### 1. Motion To Dismiss Indictment: Failure To Preserve Messages Sent By Agent Ro

Syjuco filed a motion to dismiss the indictment based on Agent Ro's failure to preserve text messages he sent to Defendants and Revereza during the investigation. In May 2011, Agent Ro lost his telephone and purchased a new one. After the investigation was completed, Agent Ro photographed all the incoming messages he received from Defendants and Revereza, but not the messages he sent. The FBI laboratory apparently attempted to retrieve the sent messages from the telephone, but were unable to do so.

The district court denied Syjuco's motion for failure to present sufficient evidence that "the Government engaged in intentional destruction of evidence." On reconsideration, the district court reaffirmed its earlier ruling, finding that Defendants failed to establish that Agent Ro acted in bad faith. The district court granted Defendants' alternative request for a curative instruction permitting the jury to infer that the outgoing messages contained information against the government's interest.

### 2. Motion To Suppress Ubaldo's Emails

Ubaldo filed a motion to suppress emails the government obtained from his account on the basis that the warrant application contained false and misleading statements. In

---

license for such export or import, issued in accordance with this chapter and regulations issued under this chapter, except that no license shall be required for exports or imports made by or for an agency of the United States Government . . .

particular, Ubaldo asserted that Agent Ro falsely represented informing Ubaldo that the weapons purchased would be shipped to the United States. The district court denied the motion because, based on Agent Ro's and Agent Lao's testimony, Ubaldo failed to establish that the statements were false or misleading.

### 3.  Trial:  Defendants' Evidentiary Challenges

On the first day of trial, Defendants moved *in limine* to prevent the government from presenting any testimony regarding the purpose of the weapons and from displaying the weapons in court. Defendants argued that the evidence was substantially more prejudicial than probative and should be excluded under Federal Rule of Evidence 403. Defendants also argued against the presentation of evidence related to Ubaldo's attempts to smuggle rifle scopes into the Philippines, describing the evidence as improper character evidence under Federal Rule of Evidence Rule 404(b).

The district court ruled in the government's favor, finding that testimony about the source of the weapons, the use of the weapons, and display of the weapons during trial was not unduly prejudicial given that the weapons were at the heart of the trial. The district court also permitted introduction of the evidence detailing Ubaldo's attempt to smuggle rifle scopes, declaring the evidence "relevant to Ubaldo's state of mind, knowledge, and intent." However, the district court tempered its ruling by noting its intent to instruct the jury that this evidence could be considered solely to determine Ubaldo's intent.

During the course of the trial, Ubaldo filed a motion to dismiss the indictment on the basis that the government

engaged in prosecutorial misconduct. A government witness, Patrick Tinling, testified that he discovered Ubaldo's correspondence about smuggling rifles scopes. In response, Ubaldo's counsel sought to establish that Ubaldo actually directed the shipper to label the rifle scopes according to the factory specifications, and introduced emails to that effect. Ubaldo's counsel also introduced an email stating that the rifle shipment was delayed for innocuous reasons. On redirect, Tinling stated that the email explaining the delay was forged. Ubaldo's counsel argued that the charges should be dismissed because the government engaged in misconduct, never disclosing that the document was forged.

The district court denied the motion. But, to cure any potential prejudice, the district court removed the letter from evidence and instructed the jury to disregard the letter and any testimony related to it.

### 4. Post-Trial Motion For Acquittal: Sufficiency of the Evidence

Syjuco filed a motion for acquittal based on insufficient evidence. Syjuco argued that no reasonable jury could find that Defendants imported, aided and abetted the importation of, or caused the importation of weapons into the United States. Defendants maintained that the evidence was not sufficient to support a conviction for importing the weapons into the United States, because government agents "alone brought the weapons into the United States." Defendants also contended that the evidence was insufficient to support an aiding and abetting conviction because government agents lacked the required *mens rea*. Finally, Defendants argued that the lack of evidence that they willfully directed the importation of the weapons precluded a finding that they

"caused" importation of the weapons.  The district court denied the motion, finding that a reasonable jury could convict Defendants on the evidence presented.

### 5.  Jury Instructions and Verdict

Prior to instructing the jury, the district court held a status conference to address the parties' arguments concerning jury instructions.  As relevant here, the parties submitted proposed instructions on aiding and abetting.  Defendants suggested that the district court instruct the jury that:

> In order to be found guilty of willfully "causing" a federal agent to import defense articles and firearms from the Philippines into the United States, the government must prove (1) that the defendants "caused" the federal agent to import those items into the United States, and (2) that the defendants did so "willfully."

> The word "cause" as used in these instructions means to direct another person to act [and] the government must prove . . . the defendants directed that agent to import those items into the United States. . . .

The district court ultimately gave the following instruction:

. . .

> In order for the defendants to be found guilty of "importing" defense articles and

firearms into the United States, the government must prove to you, beyond a reasonable doubt, that the defendants brought or aided and abetted the bringing of those items into the United States.

It is not sufficient for the government to prove that the defendants merely exported those items from the Philippines.

. . .

A defendant may be found guilty of the crimes charged . . . even if the defendant personally did not commit the acts or acts constituting the crimes, but only aided and abetted in their commission.

That is, whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal. However, the government need not prove that someone other than the defendant was guilty of the substantive crime. A person who causes the commission of an offense is punishable as a principal even though the person who completes the wrongful act violates no criminal statute because of lack of criminal intent or capacity. One who puts in motion or causes the commission of an indispensable element of an offense by an innocent agent or instrumentality is guilty as a principal.

The district court declined to instruct the jury that Defendants could not be convicted if they merely acted as brokers, because the government never offered a broker theory of liability.  The jury convicted Defendants.

### 6. Motion for Acquittal and for a New Trial: Extraterritorial Jurisdiction and Instructional Error

Defendants filed a motion for acquittal based on lack of extraterritorial jurisdiction and a motion for a new trial based on instructional error.  They asserted that Congress did not intend for 18 U.S.C. § 922(l) and 22 U.S.C. § 2778(b)(2) to apply to foreign persons whose actions occurred in a foreign country.  They also contended that the aiding and abetting language in the jury instructions converted the case into one involving brokering or mere facilitation.

The district court denied both motions.  The district court determined that the statutory language, statutory context, and legislative history demonstrated that Congress sought to capture conduct that occurred outside the United States, irrespective of the actor's citizenship.  The district court also found that the aiding and abetting language in the jury instruction did not convert the case into a brokering case because the jury was instructed that Defendants had to willfully cause the importation, not merely facilitate it.

Ubaldo filed a timely appeal challenging his conviction.

## II.  STANDARDS OF REVIEW

We apply *de novo* review to a district court's decision denying a motion for acquittal based on sufficiency of the

evidence.  *See United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008).  "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (citation omitted).

We also apply *de novo* review when reviewing a district court's decision regarding the extraterritorial reach of a statute.  *See United States v. Clark*, 435 F.3d 1100, 1106 (9th Cir. 2006).

Further, *de novo* review is applied to the denial of a motion to suppress and of a motion to dismiss an indictment. *See United States v. Fries*, 781 F.3d 1137, 1146 (9th Cir. 2015) (motion to suppress); *United States v. Black*, 733 F.3d 294, 301 (9th Cir. 2013) (motion to dismiss indictment).  But, the "factual findings underlying the denial" are reviewed for clear error.  *Fries*, 781 F.3d at 1146 (citation and alteration omitted).  And, on a motion to dismiss an indictment, the evidence is viewed in the light most favorable to the prosecution.  *See Black*, 733 F.3d at 301.

Rulings on motions for a mistrial and discovery issues are reviewed for an abuse of discretion.  *See United States v. Cardenas-Mendoza*, 579 F.3d 1024, 1029–30 (9th Cir. 2009).

A district court's evidentiary rulings and its formulation of jury instructions are also reviewed for an abuse of discretion.  *See Fries*, 781 F.3d at 1146.  Alleged misstatements of law in the district court's instructions, however, are reviewed *de novo.  See id.*

## III.  DISCUSSION

### A.  Motion for Acquittal:  Extraterritorial Application of 18 U.S.C. § 992(l) and 22 U.S.C. § 2778(b)(2)

Ubaldo contends that these statutes may not be applied to persons outside the United States because the statutes lack an expressed intention of extraterritorial application to rebut the presumption against extraterritorial application of United States statutes.  He further contends that the legislative history of the statutes reflects an express intent that the statutes apply only within the territory of the United States.

The Supreme Court recently addressed the issue of extraterritorial application of a statute in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2096 (2016), a case dealing with extraterritorial application of the Racketeer Influenced and Corrupt Organizations Act (RICO).  The Supreme Court clarified that courts must begin with the presumption that United States statutes do not apply to foreign conduct.  *See id.* at 2100.  It explained that a two-step framework must be applied to determine if that presumption has been overcome.  *See id.* at 2101.  Such framework treats the presumption against extraterritoriality as a substantive canon of construction.  Daniel Sullivan & Kevin Benish, *Statutory Interpretation and the* Morrison *Presumption Against Extraterritoriality*, 85 U.S.L.W. 1290 (March 23, 2017).

First, the court must determine whether the presumption against extraterritorial application has been rebutted by "clear [and] affirmative indication" in the statute.  *Id.*  Second, if a determination is made that the statute does not apply extraterritorially, the court must determine whether the case

at hand "involves a domestic application of the statute" by analyzing the "focus" of the statute. *Id.* If the presumption is rebutted at step one, there is no need to proceed to the second step of the analysis. *See id.* The Court held that certain of RICO's substantive provisions apply extraterritorially because the language of those provisions expressly references conduct that occurs outside the United States. *See id.* at 2101–02. Having made that ruling, the Supreme Court did not proceed to step two of the analysis. *See id.* at 2103.

For similar reasons, § 922(l) and § 2778(b)(2) overcome the presumption against extraterritoriality. *See RJR*, 136 S. Ct. at 2100–02. Analogous to the substantive RICO statutes at issue in *RJR*, illegally importing weapons into the United States by its very nature targets conduct that almost always originates outside the United States. *See id.* at 2101–02. As we noted some time ago, "smuggling by its very nature involves foreign countries, and . . . always requires some action in a foreign country." *Brulay v. United States*, 383 F.2d 345, 350 (9th Cir. 1967). The fact that illegally importing weapons into the United States almost always requires some conduct in a foreign country distinguishes it from most other crimes, such as murder. *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1665 (2013).

In addition, the legislative history of the statutes reflects an intent to capture conduct occurring outside the United States. *See* H.R. Rep. No. 94-1144 at 23 (1976), *reprinted in* 1976 U.S.C.C.A.N. 1378, 1399 (declaring "that it shall be the policy of the United States to exert leadership in the world community to bring about arrangements for reducing the international trade in implements of war and to lessen the danger of outbreak of regional conflict and the burdens of

armaments, U.S. programs for or procedures governing the export, sale, and grant of arms and munitions to foreign countries and international organizations shall be administered in a manner which will carry out this policy"); H.R. Rep. No. 90-1577 at 6 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411 (expressing a purpose "to strengthen Federal controls over interstate and foreign commerce in firearms").

We conclude that the presumption against extraterritoriality has been rebutted by the provisions within the statute and the legislative history accompanying the statute. Therefore, we need not and do not proceed to the second step of the applicable analysis. *See RJR*, 136 S. Ct. at 2101.

## B. Motion For Acquittal: Sufficiency of the Evidence

Federal law prohibits "any person" from "knowingly . . . import[ing]" weapons, firearms, and explosives into the United States without government approval. *See* 18 U.S.C. § 922(l); 22 U.S.C. § 2778(b)(2); 22 C.F.R. § 121.1. A more general criminal statute allows prosecution for "knowingly" and "willfully" aiding and abetting or engaging in actions causing harm to the United States. *See* 18 U.S.C. § 2(b). Under § 2(b), a defendant may be prosecuted even if he did not complete the substantive offense. *See id.*; *see also United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990), *as amended*.

Defendants assert that the evidence was insufficient to support their convictions because they were not involved in the actual importation of the weapons; selling the weapons was not the but-for cause of the later importation; they did not

direct the agents to ship the items; and the government agents broke the chain of causation because government agents cannot illegally import weapons. Viewing the evidence in the light most favorable to the government, this claim is meritless.

As mentioned, under § 2(b), Defendants were not required to take an active role in actually transporting or shipping the illicit weapons to the United States. *See* 18 U.S.C. § 2(b). Rather, the jury could convict Defendants if they "knowingly" and "willfully" caused the weapons to be transported to the United States. *Id.* Indeed, Defendants could be held criminally responsible for harms that flowed naturally or were a direct result of their conduct. *See United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir. 1987) (clarifying that § 2(b) was added "to remove all doubt that one who . . . assists in the illegal enterprise . . . is guilty as a principal") (alteration, ellipsis, and internal quotation marks omitted). Under the governing law, Defendants' role was sufficient to support their conviction under § 2(b). *See id.*

The government presented evidence that Syjuco earned thousands of dollars by procuring high-powered weapons and selling them to an undercover agent, who informed him that he would smuggle the guns into Mexico through California. The government also presented evidence that Ubaldo arranged the meetings for weapons sales, put Agent Ro in contact with a Philippine customs official who could help smuggle the weapons out of the country, and was aware that the weapons would be smuggled into Mexico via California. Considering those facts, a reasonable jury could find that Defendants knowingly and willfully caused illicit weapons to be imported into the United States because the importation of

the weapons flowed naturally from their conduct.  *See Causey*, 835 F.2d at 1292.

In the alternative, Defendants rely on *Burrage v. United States*, 134 S. Ct. 881, 887–88 (2014), arguing that the government failed to produce sufficient evidence that the weapons sales were a but-for cause of the importation. However, the facts in this case are consistent with the Supreme Court's reasoning in *Burrage* because Defendants entered the transaction knowing the outcome—that Agent Ro would transport the weapons to California.  *See id.* at 888 (holding that "conduct is the cause of a result if it is an antecedent but for which the result would not have occurred") (citation, alteration and internal quotation marks omitted).  In sum, Agent Ro would not have been able to import the weapons into the United States if Defendants never sold them to him.  *See United States v. Collins*, 109 F.3d 1413, 1419 (9th Cir. 1997) (reasoning that "[t]he act of an intermediary does not break the chain of causation") (citation and internal quotation marks omitted).

The result does not change because the FBI handled the shipping, because Defendants did not direct the agents to ship the weapons to the United States, or because, as a matter of law, FBI agents cannot violate the substantive statutes.  We have held that, under § 2(b), a defendant may be convicted, even if he did not commit all the elements of the offense, but "cause[d] the commission of an indispensable element of the offense by an innocent agent . . . [who] lack[s] . . . criminal intent or capacity."  *Causey*, 835 F.2d at 1292 (emphasis omitted); *see also United States v. Ezeta*, 752 F.3d 1182, 1185–86 & n.3 (9th Cir. 2014) (citing *Causey* in affirming a defendant's conviction for fraud even though he did not "exercise[] dominion and control over the unlawfully

obtained funds"); *United States v. Wise*, 221 F.3d 140, 151 (5th Cir. 2000) ("[A]n aiding and abetting conviction for a completed substantive offense may stand even if the principal is a government agent with no guilty intent and therefore no substantive crime actually was committed . . . .") (citation omitted).

In a similar case, the United States Court of Appeals for the Second Circuit rejected the argument Ubaldo raises here. *See United States v. Jordan*, 927 F.2d 53, 55–56 (2d Cir. 1991). In *Jordan*, the defendant was charged with causing the illegal importation of narcotics into the United States. *See id.* at 54. Jordan coordinated a plan for Savaneeya Batton to travel to Thailand to purchase heroin to deliver to a courier for transport to the United States. *See id.* at 54–55. Batton completed the purchase in Thailand and gave the heroin to the courier, an undercover Drug Enforcement Administration agent, who transported it to the United States. *See id.*

On appeal, the Second Circuit affirmed Batton's conviction under 18 U.S.C. § 2(b). *See id.* at 55–56. Batton argued that she could not be liable for causing the importation because a government agent completed the importation. *See id.* at 55. The court held that:

> The fact that the undercover agent was willing to be used as the instrument of her criminal activity, in order to apprehend her and her confederates, does not detract in any way from her criminal responsibility. She is as liable for the offense of importation as she would be if she had surreptitiously slipped the

heroin into the handbag of an unsuspecting passenger.

*Id.*

## C. Motion to Suppress: False and Misleading Statements in Warrant Affidavit

When a defendant seeks to suppress evidence due to a faulty search warrant, he must demonstrate that the government intentionally included false information in the affidavit supporting the warrant, and that there would not have been probable cause without the challenged statements. *See United States v. Tham*, 960 F.2d 1391, 1395 (9th Cir. 1992), *as amended*.

The search warrant application for Ubaldo's emails was supported by an affidavit from Agent Lao explaining that Agent Ro, described in the affidavit as "FBI Undercover Employee," spoke with Ubaldo about smuggling weapons into the United States. Ubaldo contends that this affidavit contained false and misleading statements regarding the final destination of the weapons and regarding his knowledge that the weapons would be imported into the United States. He also contends that Agent Lao failed to disclose that he was relaying secondhand information. He submits that the warrant application would have been denied without these allegedly false and misleading statements. The district court held a *Franks*[8] hearing on these claims, and denied Ubaldo's motion to suppress the evidence obtained from execution of the search warrant.

---

[8] *Franks v. Delaware*, 438 U.S. 154 (1978).

The evidence in the record supports the district court's finding. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1215 (9th Cir. 2005) (reviewing the district court's *Franks* ruling for clear error). Defendants simply failed to present evidence sufficient to establish that Agent Lao made materially false and misleading statements. The district court heard testimony and evidence from the parties regarding the allegedly false and misleading statements, and credited Agent Lao's testimony. That credibility determination is entitled to substantial deference. *See United States v. Becerra-Garcia*, 397 F.3d 1167, 1172 (9th Cir. 2005). The motion to suppress was properly denied.

**D. Motion To Dismiss The Indictment:  Failure To Preserve Evidence**

The government violates a defendant's due process rights when it destroys potentially exculpatory evidence in bad faith. *See United States v. Estrada*, 453 F.3d 1208, 1212–13 (9th Cir. 2006). In determining whether there was a violation warranting dismissal of the indictment, the evidence must be viewed in the government's favor. *See Black*, 733 F.3d at 301.

Ubaldo posits that the district court should have dismissed the indictment due to Agent Ro's bad faith in failing to preserve the text messages he sent. Ubaldo asserts that Agent Ro intentionally deleted the outgoing messages because they were exculpatory and preserved the incoming messages because they were inculpatory. Although the district court concluded that Ubaldo failed to establish that Agent Ro acted in bad faith, the district court nevertheless agreed to instruct the jury that it could view Agent Ro's conduct as evidence

that the outgoing text messages were against the government's interest.

The district court did not clearly err in finding that Ubaldo failed to establish bad faith. *See United States v. Sivilla*, 714 F.3d 1168, 1170–72 (9th Cir. 2013) (reviewing the district court's determination for clear error). At the hearing held to resolve this issue, Agent Ro testified that he lost many of the sent messages because he lost his cell phone in May, 2011. He was under the impression that his cell phone automatically stored the outgoing messages; therefore, Agent Ro only deleted outgoing messages that he considered unimportant. Agent Ro also attempted to retrieve his outgoing messages by sending his cell phone to the FBI technology department, but the messages could not be retrieved. *See Estrada*, 453 F.3d at 1213 (holding that a defendant failed to show bad faith when the government attempted to retrieve the lost evidence).

## E. Motion for a Mistrial: Withholding Material Evidence

Federal Rule of Criminal Procedure 16 requires the government, upon request, to permit a defendant to inspect any evidence that is material to his defense. *See Cardenas-Mendoza*, 579 F.3d at 1030. In determining whether or not to grant a mistrial based on prosecutorial misconduct of this nature, the district court may exercise its discretion to issue a curative instruction rather than granting a mistrial. *See id.*

Ubaldo asserts that the government failed to disclose a report showing that a letter regarding mislabeled rifle scopes was forged. He argues that the report was material and prejudicial because he would have never offered the letter into evidence if he had known it was forged, and that the

district court's curative instruction did not adequately purge the jury's negative impression of the evidence.

The district court acted within its discretion when it elected to issue a curative instruction rather than granting a mistrial for the purported violation of Rule 16. *See Cardenas-Mendoza*, 579 F.3d at 1029–30. Not only did the court order the letter withdrawn as evidence, the jury was instructed "to give no consideration to that letter or any testimony regarding the letter or its content." It is strongly presumed that the jury followed the court's instruction, *see United States v. Johnson*, 767 F.3d 815, 824 (9th Cir. 2014), and no evidence in the record rebuts that presumption. Accordingly, we conclude that no reversible error occurred.

**F. Evidentiary Objections:    Federal Rules of Evidence 404(b) and 403.**

Federal Rule of Evidence 404(b)(1)**⁹** bars the admission of evidence offered to show that a person acted in accordance with prior "bad acts." *See United States v. Decinces*, 808 F.3d 785, 790 (9th Cir. 2015). But, a district court may admit the evidence to show a defendant's "intent, plan, knowledge or absence of mistake." *Id.* (citation omitted); *see also* Fed. R. Evid. 404(b)(2) (2013).

---

**⁹** At the time of Ubaldo's trial, Rule 404(b)(1) provided: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1) (2013).

Federal Rule of Evidence 403[10] bars the admission of evidence when the danger of unfair prejudice substantially outweighs the probative value of the evidence. *See United States v. Lloyd*, 807 F.3d 1128, 1151 (9th Cir. 2015). "A district court's Rule 403 determination is subject to great deference, because the considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues." *Id.* at 1152 (citation and internal quotation marks omitted).

Ubaldo asserts that the admission of emails showing that he previously attempted to mislabel rifle scopes to bypass Philippine customs violated Rule 404(b). He maintains that the evidence was irrelevant to the charged offenses, was unduly prejudicial, and did not conform to the rule's definition of a prior bad act. He also contends that the district court violated Rule 403 by allowing a government witness to testify about the capabilities of the weapons; terrorist use of the weapons; the destructive power of the weapons; and the origin of the weapons in an area of the Philippines frequented by terrorists. Finally, he challenges the district court's decision to allow the weapons introduced into evidence to remain on display in the courtroom.

We do not agree that the district court abused its discretion in admitting the evidence regarding Ubaldo's previous smuggling conduct because it was relevant to show

---

[10] Rule 403 provided: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (2013).

his "intent, plan, knowledge or absence of mistake." *Decinces*, 808 F.3d at 790 (citation omitted). Nor did the district court abuse its discretion in allowing the government to introduce testimony regarding the capabilities, usage, and source of the weapons. *See Lloyd*, 807 F.3d at 1152. Given "the surrounding facts, circumstances, and issues" of the case, it was reasonable for the district court to find that the testimony was not unduly prejudicial because it could help prove that Defendants knew the weapons would be shipped to the United States for illicit purposes. *Id.*

Ubaldo cites no case authority supporting his argument that it was reversible error for the district court to allow the weapons introduced into evidence to remain on display in the courtroom. In any event, any error in allowing the weapons to remain on display was harmless beyond a reasonable doubt in view of the overwhelming evidence of guilt in the record. *See United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008).

## G.  Motion for a New Trial:  Jury Instructions

A district court's formulation of jury instructions must adequately cover the applicable law and must not be misleading. *See Lloyd*, 807 F.3d at 1164. We review the instructions as a whole when determining if there was instructional error. *See id.*

Ubaldo asserts that the district court improperly instructed the jury on causation under 18 U.S.C. § 2(b) by using the phrase "aid and abet" interchangeably with "cause," and likely confused the jury by using the vague phrase "puts in motion." Additionally, Ubaldo contends that the district court erred by failing to give a more in-depth instruction on

willfulness and by failing to explain that Defendants could not be convicted for merely brokering the transactions. We are not persuaded.

The instructions given adequately covered the law regarding the elements necessary to find Defendants guilty of causing the importation of weapons into the United States under § 2(b) and were consistent with our ruling in *Causey*. *See Causey*, 835 F.2d at 1292 (holding that a violation of § 2(b) occurs when an individual "*puts in motion or . . . causes* the commission of an indispensable element of the offense") (emphasis added). Defendants were criminally liable for willfully violating § 2(b) because they "put[] in motion or assist[ed] in . . . the commission of an indispensable element of the offense." *Id.* The district court's inclusion of the phrase "aided and abetted" in the § 2(b) causation instruction was unlikely to mislead the jury in view of the balance of the instruction that correctly guided the jury deliberations. *See Lloyd*, 807 F.3d at 1164–65 (considering the instructions as a whole in concluding that error occurred).

Finally, there is no merit to Defendants' contentions that the district court's willfulness instruction was incomplete, or potentially allowed the jury to convict Defendants for merely facilitating or brokering the deals. As previously stated, the district court's instructions tracked this Court's holding in *Causey*, and tracked the language of the statute. *See Causey*, 835 F.2d at 1292 (describing the aiding and abetting statute as prohibiting willful acts); *see also United States v. Garcia*, 729 F.3d 1171, 1177 (9th Cir. 2013) (noting that "an instruction tracking a statute is generally not erroneous") (citation omitted); *Lloyd*, 807 F.3d at 1165 (holding that the district court did not err in instructing the jury, even though

the defendant requested a more expansive instruction on recklessness). As acknowledged by Defendants, they were not charged under the Brokering Amendment of the statute. Consequently no instruction addressing brokering was warranted. *See Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) ("There must be a sufficient evidentiary foundation to support giving [a jury] instruction.") (citation omitted).

## IV.    CONCLUSION

The district court correctly determined that, considering the language of the legislation and the history of the legislation, the weapons importation statutes, §§ 922(l) and 2778(b)(2), apply extraterritorially. Applying the aiding and abetting statute to Defendants' conduct, the district court properly rejected the challenge to the sufficiency of the evidence to support the jury's verdict. Finally, the evidentiary rulings and jury instruction formulations were all comfortably within the district court's discretion.

**AFFIRMED.**